IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AFFINITY LABS OF TEXAS, LLC, | |
| Plaintiff, | The Honorable Robert L. Pitman |
| | Case No. 1:15-cv-00849-RP |
| v. | |
| NETFLIX, INC., | Jury Trial Demanded |
| Defendant. | |

## DEFENDANT NETFLIX, INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.    Introduction ................................................................................................................ 1

II.   Patent Eligibility is a Threshold Issue Appropriately Decided At the Pleading Stage ........... 3

III.  The '802 Patent Is Invalid for Claiming Ineligible Subject Matter ......................................... 5

   a.  Step 1:  The Claims of the '802 Patent Are Directed to The Abstract Idea of
       Segmenting and Formatting Data for Communication at Different Rates ....................... 8

   b.  Step 2:  The Claims of the '802 Patent Lack an "Inventive Concept" Sufficient to
       "Transform" the Abstract Idea into a Patent-Eligible Subject Matter ........................... 10

       i.   The Independent Claims Do Not Have an Inventive Concept .................................. 10

       ii.  The Dependent Claims Do Not Add an Inventive Concept ...................................... 16

   c.  The '802 Patent Claims Are Indistinguishable From Invalid Affinity Sibling Claims ... 18

IV.  Conclusion ..................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adrea, LLC v. Barnes & Noble, Inc. et al.*,
  No. 1:13-cv-04137, U.S. Dist. LEXIS 100312 (S.D.N.Y. July 24, 2015) ................................ 10

*Affinity Labs of Texas, LLC v. DirecTV, LLC,*
  Case No. 6:15-CV-0030, 2015 U.S. Dist. LEXIS 92889 (W.D. Tex. July 7, 2015) ......... passim

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.*
  Case No. 6:15-CV-00029, 2015 U.S. Dist. LEXIS 77411 (W.D. Tex. June 12, 2015) ..... passim

*Alice Corp. Pty. Ltd. V. CLS Bank Int'l,*
  134 S.Ct. 2347 (2014) .................................................................................................. passim

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
  56 F. Supp. 3d 813 (E.D. Va. 2014) .......................................................................................... 8

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.),*
  687 F.3d 1266 (Fed. Cir. 2012) .................................................................................................. 3

*Becton, Dickinson and Co. v. Baxter Int. Inc.,*
  No. 1-14-cv-222, 2015 U.S. Dist. LEXIS 112834 (W.D. Tex. Aug. 3, 2015) ........................ 18

*buySAFE, Inc. v. Google, Inc.,*
  765 F.3d 1350 (Fed. Cir. 2014) ..................................................................................... 3, 9, 12

*Cal. Inst. of Tech. v. Hughes Communications Inc.,*
  59 F. Supp. 3d 974 (C.D. Cal. 2014) ......................................................................................... 8

*Clear with Computers, LLC v. Altec Indus.,*
  2015 U.S. Dist. LEXIS 28816 (E.D. Tex. Mar. 3, 2015) ........................................................... 4

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014) ..................................................................................... 3, 5, 18

*Cybersource Corp. v. Retail Decisions, Inc.,*
  654 F.3d 1366 (Fed. Cir. 2011) .................................................................................................. 9

*DDR Holdings, LLC v. Hotels.com L.P.,*
  773 F.3d 1245 (Fed. Cir. 2014) ................................................................................... 15, 16, 17

*DealerTrack, Inc. v. Huber,*
  674 F.3d 1315 (Fed. Cir. 2012) ........................................................................................ 11, 13

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.,*
  758 F.3d 1344 (Fed. Cir. 2014) ......................................................................................... 2, 11

*In re Bilski*,
　　545 F.3d 943 (Fed. Cir. 2008)...............................................................................3, 4

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
　　792 F.3d 1363 (Fed. Cir. 2015)..................................................................................9

*Intellectual Ventures I LLC v. Symantec Corp.*,
　　C.A. No. 10-1067-LPS, 2015 U.S. Dist. LEXIS 525257 (D. Del. April 22, 2015)...................9

*Internet Patents Corp. v. Active Network, Inc.*,
　　790 F.3d 1343 (Fed. Cir. 2015)...........................................................................3, 4, 14

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
　　Case No. 2:12-cv-800, 2015 U.S. Dist. LEXIS 69363 (E.D. Tex. May 29, 2015).......14, 15, 17

*Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*,
　　66 F. Supp. 3d 829 (E.D. Tex. 2014).........................................................................8

*Market Track, LLC v. Efficient Collaborative*,
　　Case No. 14 C 4957, 2015 U.S. Dist. LEXIS 75916 (N.D. Ill. June 12, 2015)...................2, 11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
　　132 S.Ct. 1289 (2012)...............................................................................4, 10, 12

*Morales v. Square, Inc.*,
　　75 F. Supp. 3d 716 (W.D. Tex. 2014).........................................................................8

*OIP Techs., Inc. v. Amazon.com, Inc.*,
　　788 F.3d 1359 (Fed. Cir. 2015)...............................................................................3, 4

*Oran v. Stafford*,
　　226 F.3d 275 (3d Cir. 2000).......................................................................................3

*Parker v. Flook*,
　　98 S.Ct. 2522 (1978)..................................................................................................3

*TriPlay, Inc. v. WhatsApp Inc.*,
　　No. 1:13-CV-01703, 2015 U.S. Dist. LEXIS 55068 (D. Del. Apr. 28, 2015)..........2, 10, 11, 13

*Ultramercial, Inc. v, Hulu, LLC*,
　　772 F.3d 709 (Fed. Cir. 2014)...................................................................3, 9, 11, 12, 18

*Walker Digital, LLC v. Google, Inc.*,
　　66 F. Supp. 3d 501 (D. Del. 2014).............................................................................9

**Statutes**

35 U.S.C. § 101 ...............................................................................................................1, 20

35 U.S.C. § 112..................................................................................................................7

Fed. R. Civ. P. 12(b)(6)............................................................................................... 1, 3, 4

MPEP § 201.07 ............................................................................................................... 5

Netflix moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Dismissal is warranted because all of the claims of the lone patent asserted in this action, U.S. Patent No. 9,094,802 (the "'802 patent")[1], are directed to patent-ineligible subject matter.  *See* 35 U.S.C. § 101.

## I.     <u>Introduction</u>

The '802 patent preempts a fundamental concept while contributing nothing to the advancement of the useful arts.  The claims of the '802 patent recite the simple and well-known idea of segmenting and formatting data for communication at different rates. This is a fundamental, centuries-old practice exhibited in everyday communication.  When a lawyer arguing in court speaks too quickly – transmitting too many words per second for a court reporter to transcribe – the court reporter will ask the lawyer to speak more slowly, and the lawyer will slow her pace – reducing the number of words transmitted per second.  In this example, the lawyer's speech is broken into a first segment that is formatted for delivery at one rate (the quickly-spoken words preceding the court reporter's request) and a second segment formatted for communication at a different, slower rate (after the reporter's request).  This is a common-sense practice used long before the '802 patent.  It is not inventive, and merely applying it in the context of Internet communications does not render it eligible for patent protection.  *Alice Corp. Pty. Ltd. V. CLS Bank Int'l,* 134 S.Ct. 2347, 2358 (2014) ("limiting the use of an abstract idea to a particular technological environment" does not "transform a patent-ineligible abstract idea into a patent-eligible invention" (internal citation and quotation omitted)).  This Court should invalidate the '802 patent now, before litigation consumes needless resources of the parties and the court.

Notably, two sibling patents to the '802 patent have already been invalidated *at the pleading stage* by a court in this district.  These sibling patents share the same specification as the '802 patent and include claims nearly identical to the '802 patent claims.  In *Affinity Labs of*

---

[1] A copy of the '802 patent is attached hereto as <u>**Exhibit A**</u>.

*Texas, LLC v. Amazon.com, Inc.* ("*Affinity v. Amazon*"), Judge Smith determined that every claim of sibling U.S. Patent No. 8,688,085 (the '085 patent)[2] was ineligible and thus invalid. Case No. 6:15-CV-00029, Docket No. 68, 2015 U.S. Dist. LEXIS 77411 (W.D. Tex. June 12, 2015) (holding that the '085 patent claims were directed to the abstract idea of "delivering selectable media content and subsequently playing the selected content on a portable device"). The invalid claims of the '085 patent include claim 16, which like the '802 patent claims, recites streaming media content to a requesting device at a first rate and then a second rate. '085 Patent at 20:19-37.  Similarly, in *Affinity Labs of Texas, LLC v. DirecTV, LLC* ("*Affinity v. DirecTV*"), Judge Smith found the subject matter of another sibling patent, U.S. Patent 7,970,379 (the "'379 patent")[3], is also directed to generic notions of streaming media to remote devices and thus ineligible for patent protection. Case No. 6:15-CV-0030, Docket No. 58, 2015 U.S. Dist. LEXIS 92889 (W.D. Tex. July 7, 2015) (holding the claims of '379 patent are directed to the abstract idea of "dissemination of regionally broadcasted[ed] content to users outside the region").

Moreover, data formatting patents such as the '802 patent have been routinely held invalid for claiming unpatentable subject matter since *Alice Corp.  See, e.g., TriPlay, Inc. v. WhatsApp Inc.*, Case No. 1:13-CV-01703, Docket No. 52, 2015 U.S. Dist. LEXIS 55068, *30 (D. Del. Apr. 28, 2015) (invalidating claims to "converting and forwarding messages . . . in a format and layout in which they can be received by a recipient"); *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (affirming district court decision that claims directed to organizing existing information into a new form are not patent eligible); *Market Track, LLC v. Efficient Collaborative*, Case No. 14 C 4957, 2015 U.S. Dist. LEXIS 75916, *26 (N.D. Ill. June 12, 2015) (invalidating claims directed to formatting an image for output and delivery because "formatting" is not inventive, but is well understood, routine and conventional).

---

[2] A copy of the '085 patent is attached hereto as **Exhibit B**.
[3] A copy of the '379 patent is attached hereto as **Exhibit C**.

As this District has done twice before with the '802 patent's siblings, and as other district courts have done with similar patents, this Court should find the subject matter of the '802 patent ineligible and grant Netflix's motion to dismiss.

## II.    Patent Eligibility is a Threshold Issue Appropriately Decided At the Pleading Stage

Whether a claim is drawn to patent-eligible subject matter under §101 is "an issue of law" that is a "threshold inquiry." *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008), *aff'd Bilski v. Kappos*, 130 S.Ct. 3218, 3225 (2010) (describing §101 as "a threshold test"); *Parker v. Flook*, 98 S. Ct. 2522, 2527 (1978) (noting that an inquiry under §101 "must precede the determination of whether [a] discovery is, in fact, new or obvious"); *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) ("Whether a claim is drawn to patent-eligible subject matter is an issue of law[.]").   The Federal Circuit has confirmed that deciding patent eligibility under §101 is appropriate at the pleading stage. *See e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming motion to dismiss on §101 grounds); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 711 (Fed. Cir. 2014) (same); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (affirming Rule 12(c) finding of ineligibility); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2015) (affirming Rule 12(b)(6) finding of ineligibility); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) (same).   Indeed, Federal Circuit Judge Mayer has declared that eligibility under §101 "is the primal inquiry, one that must be addressed at the outset of litigation." *Ultramercial, Inc.*, 772 F.3d at 718 (Mayer, J., concurring).   This declaration is rooted in sound policy because addressing §101 at the outset of litigation "conserve[s] scarce judicial resources," "provides a bulwark against vexatious infringement suits," and protects the public at the outset from "patents that stifle innovation and transgress the public domain." *Id*. at 719-20.

Claim construction is not required before determining eligibility. *See Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012);

*Internet Patents Corp.*, 790 F.3d at 1349 (affirming Rule 12(b)(6) finding of ineligibility without claim construction); *OIP Techs., Inc.*, 788 F.3d at 1359 (same).  Where the basic character of the claims can be readily understood, as here, claim construction is unnecessary prior to ruling on patent-ineligibility.  *Clear with Computers, LLC v. Altec Indus.*, 2015 U.S. Dist. LEXIS 28816, *10 (E.D. Tex. Mar. 3, 2015).

The Supreme Court has established a two-step analytical framework for distinguishing patents that claim patent-ineligible laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts.  *Alice Corp.,* 134 S.Ct. at 2355 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, (2012)).  First, the court must determine whether the claims at issue are directed to a patent ineligible abstract idea. *Id.* (citing *Mayo*, 132 S.Ct. at 1296-97).  Abstract ideas may include a "fundamental economic practice long prevalent in our system of commerce," a "longstanding commercial practice," or "a method of organizing human activity."  *Alice Corp.*, 134 S.Ct. at 2356 (citing *Bilski*, 561 U.S. at 611, 619).

Second, if the claims at issue are directed to an abstract idea, "the court then considers the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application of that abstract idea." *Id.* (quoting *Mayo*, 132 S.Ct. at 1297-98).  The court must determine whether the patent claims include an "inventive concept . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice Corp.*, 134 S.Ct. at 2355 (quoting *Mayo*, 132 S.Ct. at 1297-98).  The second step looks for "additional features" of the claim amount to "something more" to ensure that it "is more than a drafting effort designed to monopolize the [abstract idea]." *Id.*, 134 S.Ct. at 2357 (citing *Mayo*, 132 S.Ct. at 1297).  In the second step analysis, the Supreme Court instructs that "well-understood, routine, conventional activities previously known to the industry," limiting an idea to a particular field of

use or a particular technological environment, data-gathering steps, or other token pre-, post- or extra-solution activity are not inventive concepts. *Id.* at 2357-59.

This §101 inquiry turns on the subject matter of the claims, not on claim drafting. *See Alice Corp.*, 134 S.Ct. at 2360 (explaining that the "Court has 'long warn[ed] . . . against interpreting §101 in ways that make patent eligibility depend simply on the draftsman's art'" (citation omitted)). For this reason, a movant may challenge eligibility through representative claims and without engaging in a repetitive attack on each claim individually. *See Content Extraction & Transmission LLC*, 776 F. 3d at 1348 (holding it "unnecessary" to address each claim to invalidate all claims because "all the claims are 'substantially similar and linked to the same abstract idea'" (citation omitted)).

## III.   The '802 Patent Is Invalid for Claiming Ineligible Subject Matter

The '802 patent is a member of a family of patents all claiming priority to U.S. Pat. App. No. 09/537,812 (the "'812 application"). The '802 patent, like its sibling patents, is directed to a generic system and method for delivering media.[4]   The shared specification discloses, in entirely functional terms, that media can be selected and sent to an electronic device:

> [A] user may select information from an Internet website operable to allow selectivity of audio information such as songs, on-line radio stations, on-line broadcasts, streaming audio, or other selectable information. Upon selecting the audio information, information or data associated with the selected audio information is wirelessly communicated to an electronic device. The electronic device may then be used to process the selected audio information. In this manner, a user may receive selective audio information via a wireless electronic device.

'802 patent, 2:64-3:5. Nothing in the specification describes any technological advance to implement these functional requirements.  There is no explanation or limitation as to how the

---

[4] The patents in this family, including the '802 patent, are continuations of the original '812 application and share the same specification; as such all are directed to the same invention. *See* MPEP §201.07 ("A continuation is a second application *for the same invention* claimed in a prior nonprovisional application . . . .").

media is to be sent to the electronic device.  There is no particular computer programming, system logic, or algorithmic steps.  There is not a single improvement to the functioning of any computer, server, website, software, or any other technological field.   To the contrary, the specification is agnostic about the particular technology used to implement its basic idea.  It describes nothing more than an abstraction implemented using generic computer hardware and software—a naked idea lacking reference to any particular, much less inventive, technology.  For this reason, as explained below, this District has already found two siblings to the '802 patent ineligible for being directed to an abstract idea.  *Affinity v. Amazon*, at 6  (finding that an Affinity patent with the same specification as the '802 patent "solves no problems, includes no implementation software, [and] designs no system");  *Affinity v. DirecTV*, at 17 (affirming that another Affinity patent with the same specification as the '802 patent "describe[s] conventional, well known and routine concepts, accomplished using computer hardware and software recited in 'purely functional and generic' terms").

The '802 claims, like the claims of its invalidated sibling patents, are directed to a generic system and method for delivering media.  The '802 patent contains three independent claims (nos. 1, 9 and 14) all of which recite nearly the same limitations, but claims 1 and 9 are written as "method" claims and claim 14 is written as a "system" claim.  Claim 1 is exemplary[5]:

> 1. A method to deliver media, comprising:
>
> organizing an available media into a plurality of independent segment files to facilitate delivery;
>
> formatting a given segment to facilitate an outputting of the given segment at a given rate;
>
> formatting a different segment to facilitate an outputting of the different segment at a different rate, wherein the different rate is slower than the given rate;

---

[5] Claim 1 is discussed here as representative of the remaining claims for purposes of the Step One portion of the §101 patentability analysis.  The other claims are discussed in more detail in the Step Two analysis, below.

> generating a list that includes an address for each of the plurality of independent segment files;
>
> receiving an HTTP communication that indicates a desire to access the available media;
>
> sending the list in response to receiving the HTTP communication;
>
> sending the given segment; and
>
> sending the different segment.

'802 patent, 18:29-45.   This claim is directed to dividing data into segments for delivery and formatting the segments for output at different speeds, and then sending them.   In other words, segmenting and formatting data for communication at different rates.

Neither the specification nor claims describe how this is done.   In fact, only one line in the specification as filed mentions dividing media into segments and it says nothing about *how* to divide the media to execute this idea.[6]   '802 patent at 3:26-28 ("an audio file may be formatted, segmented, compressed, modified, etc. for the purpose of providing or communicating the audio invention").   The claim also requires that at least one of the segments is "formatted" for "outputting at a given rate" and at least one other segment is "formatted" for output at a slower rate.   Again, neither the specification nor the claim describes how this formatting is done.[7]

The claim also requires generating a list of segment addresses, receiving a request for access to the media, and finally sending the list and formatted segments in response to the request.   Although this generic functionality is incidental to the purpose of the claim, neither it nor the specification explain how it is to occur.   Indeed, the only mention of any list in the specification as filed is that a "playlist can be created"; again, it does not say how the "playlist" is created or what information it contains.   *Id*. at 14:56-61.

---

[6] This patent is also invalid for failing to satisfy the written description requirement of 35 U.S.C. § 112.   Defendant is not moving on that basis now because the Court can dispose of this case on the threshold, purely legal issue of § 101 ineligibility.

[7] The specification as filed merely mentions that formatting to achieve a communication rate can be done.   *Id*. at 5:22-52 ("selected information may be formatted and transmitted to achieve a desirable transmission rate.").

The '802 patent claims could be implemented in a countless number of ways, a telltale sign that they are directed to an abstract idea. *Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (invaliding claims that were "largely functional in nature" and "do not provide any significant description of the particular means by which the various recited functions are performed" because such claims "have the potential to foreclose future innovation disproportionately relative to the contribution of the inventor" (internal quotations and citations omitted)). These claims are not limited to any particular application or use, but instead simply describe, at a high level of generality, the concept of segmenting and formatting data for communication at different rates.

### a.   Step 1:  The Claims of the '802 Patent Are Directed to The Abstract Idea of Segmenting and Formatting Data for Communication at Different Rates

The '802 claims are directed to a fundamental, longstanding method of communication that is an abstract idea.  As discussed above, "a claim is directed to an abstract idea when it describes a fundamental concept or longstanding practice." *Morales v. Square, Inc.*, 75 F. Supp. 3d 716, 724 (W.D. Tex. 2014).  "In determining whether a claim is directed to an abstract idea, courts look past the claim language to 'the purpose of the claim—in other words, what the invention is trying to achieve.'" *Id.* (quoting *Cal. Inst. of Tech. v. Hughes Communications Inc.*, 59 F.Supp.3d 974, 991 (C.D. Cal. 2014)); *see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 56 F. Supp. 3d 813, 820 (E.D. Va. 2014) (analyzing a claim "[o]n its face and looking past the mere claim language"); *Alice Corp.*, 134 S.Ct. at 2356 (finding that a claim reciting a specific, multiple-step process was drawn to the abstract concept of mitigating settlement risk using a third party).   Step one is a "quick look" test, wherein courts "recite the claim's purpose at a reasonably high level of generality." *Affinity v. DirecTV*, at 17.  "All of the claim limitation need not be abstract.  The patent may not pass § 101 muster 'if the concept embodied by the majority of the limitations' describe an abstract idea." *Id.* (quoting *Ultramercial*, 772 F.3d at 715).

The Supreme Court and the Federal Circuit have repeatedly found that methods of organizing "human activity" constitute abstract ideas.  *E.g.*, *Alice Corp.*, 134 S. Ct. at 2356;

*Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015). Relatedly, the Federal Circuit and other courts have found that if the asserted claims can be "performed by human beings in a non-computerized context," they are abstract. *Intellectual Ventures I LLC v. Symantec Corp.*, C.A. No. 10-1067-LPS, 2015 U.S. Dist. LEXIS 525257, **25-26 (D. Del. April 22, 2015) (finding such an analysis "helpful" to "assessing whether the claims of the patent are directed to an abstract idea"); *see also buySAFE*, 765 F.3d at 1353; *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371-73 (Fed. Cir. 2011); *Walker Digital, LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 509-10 (D. Del. 2014).

Here, the '802 claims are directed to the abstract idea of segmenting and formatting data for communication at different rates. This is a longstanding, fundamental practice used in all types of communication, including person-to-person communication. As in the example of the lawyer, people regularly segment their messages into pieces and format those pieces for communication at different rates. A teacher delivering a lecture may break his lesson into segments. Simple introductory remarks could be one segment; the denser material another. The teacher could format the first segment for fast communication by speaking quickly. The teacher could then format the second segment for slower communication by speaking more slowly.[8] By doing so, this teacher is "segmenting" the presentation and "formatting" the "segments" for "output" at different "rates."

As another example, consider a Navy ship in World War II conveying a message about an enemy submarine. The message could be segmented – one segment could be urgent details and another segment could be a more complete report. The first segment could be formatted into morse code for fast delivery via radio and the second segment could be formatted as a written letter for slower delivery via courier service. The sailor doing this, like the teacher discussed above, is segmenting and formatting the data for output at different rates, a longstanding and

---

[8] The teacher may even reflect this formatting in his speaking notes: single-spaced formatting for the introduction; double-spaced for the denser content.

fundamental practice.

As these examples show, segmenting and formatting data for communication at different rates is a normal part of all communication both for humans and machines and, as such, is an abstract idea. *See Adrea, LLC v. Barnes & Noble, Inc. et al.*, Case No. 1:13-cv-04137, U.S. Dist. LEXIS 100312, *14 (S.D.N.Y. July 24, 2015) (granting motion for judgment of invalidity under section 101 on the pleadings where the "patent claims merely recite, in broad and generic terms, steps that are equivalent to those one could take in the physical world"). The '802 patent claims are directed to this abstract idea.

**b. Step 2: The Claims of the '802 Patent Lack an "Inventive Concept" Sufficient to "Transform" the Abstract Idea into a Patent-Eligible Subject Matter**

**i.  The Independent Claims Do Not Have an Inventive Concept**

"A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Alice Corp.*, 134 S.Ct. at 2357 (quoting *Mayo*, 132 S.Ct. 1289).  However, the claims of the '802 patent do not contain anything more than the abstract concept itself.  To the extent they do recite technical elements, all such elements were well understood, routine and conventional.  *See Alice Corp.,* 134 S. Ct. at 2358 (quoting *Mayo*, 132 S.Ct. at 1294).  As a result, the subject matter of these claims is ineligible for patent protection.

Claim 1, for example, contains eight conventional steps, none of which amount to an inventive concept either alone or in combination.  The first step, "organizing an available media into a plurality of independent segment files to facilitate delivery" is entirely routine, conventional and well-known.  This step essentially recites the unpatentable abstract idea of dividing a file into smaller pieces for delivery. *TriPlay, Inc.*, 2015 U.S. Dist. LEXIS 55068 at *30-31 (formatting files to facilitate delivery across different networks is not eligible for patent protection).  As discussed above, this is not a technological advance but instead a common practice utilized in every day communication.

The second and third steps of claim 1 describe "formatting a given segment to facilitate an outputting of the given segment at a given rate" and "formatting a different segment to facilitate an outputting of the different segment at a different rate, wherein the different rate is slower than the given rate."  Neither the claim nor the specification mention how these segments are formatted.  Nor do they describe how the two formats differ from one another.  As a result, these broad, functional steps do not provide an inventive concept.  *See DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (patent invalid where it "does not specify how the computer hardware and database are specially programmed to perform the steps claimed in the patent"); *Affinity Labs v. DirecTV*, at 8 (claims reciting an "application" that "enables" a device to present a "graphical user interface" provided no inventive concept; patent was "devoid of any teaching or blueprint explaining how the device can do what it purports to do").[9]  It is well established that formatting data for delivery is not patent eligible; rather, it is conventional and well-understood.  *See, e.g.*, *TriPlay, Inc.*, 2015 U.S. Dist. LEXIS 55068 at *30 ("Like the patent at issue in *Ultramercial III*, the 'majority of the limitations' of the claims at issue in the '475 patent describe only an abstract idea: the idea of converting and forwarding messages, so that the messages are sent in a format and layout in which they can be received by a recipient."); *Digitech Image Techs.*, 758 F.3d at 1351 (affirming district court decision that claims directed to organizing existing information into a new form are not patent eligible); *Market Track, LLC*, 2015 U.S. Dist. LEXIS 75916 at *26 (invalidating claims directed to formatting an image for output and delivery because "formatting" is not inventive, but a well understood, routine and conventional processing function).  Nothing in these steps of claim 1 adds an inventive concept.

The fourth and sixth steps of claim 1 require "generating a list that includes an address for each of the plurality of independent segment files" and "sending the list in response to

---

[9] Because they are undescribed and unclaimed, these steps must presumably be performed with generic computer hardware and software, which "cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Alice Corp.*, 134 S.Ct. at 2358.

receiving the HTTP communication." Making a list of addresses does not add any inventive concept to the claims. Generating and transmitting such lists, a task that can be entirely done by the human mind or pen and paper, is undeniably a conventional practice that cannot constitute an inventive concept. *Ultramercial, Inc.*, 772 F.3d at 716 ("Adding routine additional steps such as updating an activity log, . . . and use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter.").

The fifth step, "receiving an HTTP communication that indicates a desire to access the available media," like the sixth step adds no inventive concept beyond the abstract idea. HTTP communication underpins everything that occurs on the World Wide Web; this step merely requires receiving a request for a file via the Internet. A request over the Internet is routine and ubiquitous. As stated in numerous cases, the "use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter." *Ultramercial, Inc.*, 772 F.3d at 716. This step of claim 1 adds no inventive concept.

The last two steps, "sending the given segment" and "sending the different segment" add nothing beyond the abstract idea. These segments are just different pieces of data. Simply sending pieces of data occurs innumerable times a second on the Internet. The Federal Circuit has expressly held that sending and receiving data over the Internet "is not even arguably inventive." *See, e.g., buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

Thus these steps, standing alone, are not inventive. Considering them as an "ordered combination," then, also yields no inventive concept beyond the abstract idea of segmenting and formatting data for communication at different rates. *Alice Corp.*, 134 S.Ct. at 2355 (quoting *Mayo*, 132 S.Ct. at 1297-98). The only arguable difference between the abstract idea and the ordered combination is that, combined, the claim limitations require generating and transmitting a list of segment locations. This is nothing more than the basic practice of providing addresses of information to users. As discussed above in connection with steps four and six, it adds nothing inventive.

The other independent claims fare no better.  Although the claim language is slightly different, claim 14 essentially tracks claim 1 and their few differences do not transform the abstract idea into eligible subject matter.

The first limitation of claim 14 requires "a media available for delivery as a series of segments."  This is no different than first step of claim 1, "organizing an available media into a plurality of independent segment files to facilitate delivery."  For the same reasons discussed above in connection with claim 1, this limitation does not provide any inventive concept.

The first limitation further requires that some segments are "configured to allow delivery to a requesting device via a network capable of communicating information at a first rate" and other segments are "configured to allow delivery to the requesting device via a link capable of communicating at a second rate."  This is the same as the second and third steps of claim 1, where the segments are "formatt[ed] . . . to facilitate an outputting of the given segment at a given rate" and "formatt[ed] . . . to facilitate an outputting of the different segment at a different rate."  As discussed with claim 1 above, neither the claims nor the specification discuss how these segments are configured or how the two configurations differ from one another (except for one being designated for transmission at a slower rate than the other), and as a result, does not demonstrate an inventive concept.  *See DealerTrack, Inc.*, 674 F.3d at 1333; *Affinity Labs v. DirecTV*, at 8.  Also as discussed above, configuring or formatting data for delivery on different networks falls within the well-understood and conventional concept of translating and is therefore not patent eligible.  *TriPlay*, 2015 U.S. Dist. LEXIS 55068 at *51, 57.  Nothing in the first limitation of claim 14 adds an inventive concept.

The second limitation of claim 14 requires "a media playlist for the available media that includes a network location for" the various segments.  For the same reasons discussed above, the recitation of a list of network locations is not an inventive concept.

The final limitation of claim 14 requires "a delivery resource configured to respond to a plurality of file requests by transmitting information to the requesting device in a manner that

facilitates a continuous outputting of the available media by the requesting device."  Neither the claims nor the specification describe this "delivery resource," or explain how one would "transmit" media "in a manner to facilitate continuous" output.  In fact, there is no mention of continuous output by the receiving device in the specification other than a conclusory statement that a "user may select a continuous communication of selected audio information …. As such, the method may continuously play or execute the received audio information."  *Id*. at 15:59-62.  Because it abstractly requires "continuous outputting" – a limitation akin to a CD player on repeat – without any explanation of how this is accomplished, this delivery resource and its claimed functionality do not provide an inventive concept.  *See, e.g., Internet Patents Corp. v. Active Networks, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (affirming district court decision that patent claim is not directed to patent-eligible subject matter where the purported essential innovation is not described in the specification and there is no restriction on how the claims' objectives are accomplished); *Kroy IP Holdings, LLC v. Safeway, Inc.*, Case No. 2:12-cv-800, 2015 U.S. Dist. LEXIS 69363, *76 (E.D. Tex. May 29, 2015) (invalidating claims that are "recitations of objectives . . . are effectively functional in nature, and would read on any method of achieving those objectives with a computer").  The court in *Affinity v. Amazon* considered a "delivery resource" limitation with nearly the same language and found it to be an example of the "routine and generic processing and storage capabilities of computers generally."  *Affinity v. Amazon,* at 34. Therefore, neither this final limitation alone, nor the ordered combination of the claim's limitations, provides any inventive concept sufficient to transform the abstract idea into patent eligible subject matter.

Claim 9, the only other independent claim in the '802 patent, combines the above language from claims 1 and 14, and for the reasons discussed above, that language does not provide an inventive concept.  Claim 9 additionally requires generic buffering activities: "a device having a buffer . . . and a collection of instructions operable . . . to consider the amount of information stored in the buffer . . . ."  '802 patent at 19:14-20.  The patent is silent, however, as

to *what* these instructions are or *how* they are to "consider the amount of information stored in the buffer."  As such, this generic notion of a buffer with instructions cannot constitute an inventive step.  *See, e.g., Kroy IP,* 2015 LEXIS 69363 at *76 (invalidating claims that are "recitations of objectives . . . are effectively functional in nature, and would read on any method of achieving those objectives with a computer").  The *Affinity v. Amazon* court specifically held that "buffering is and has always been an incidental and conventional step in transmitting data." *Affinity v. Amazon,* at 42.

Furthermore, the '802 patent claims are distinguishable from the only case in which the Federal Circuit has found claims patent eligible since *Alice Corp.*.  *See DDR Holdings, LLC v. Hotels.com L.P.,* 773 F.3d 1245 (Fed. Cir. 2014).  Unlike the patent in *DDR Holdings*, the claims of the '802 patent do not address a "challenge particular to the Internet" nor a problem "specifically arising in the realm of computer networks." 773 F.3d at 1257; *Affinity v. Amazon,* at 39.  Rather, the claims of the '802 patent only describe an age-old communication practice applied to the Internet, and propose no solutions or improvements to the network itself. Secondly, the claims in *DDR Holdings* explicitly detailed "how interactions with the internet are manipulated to yield a desired result" and a specific way to do so. 773 F.3d at 1258-60.  In contrast, the '802 patent never explains – much yet claims – how segmenting is accomplished, how formatting or configuring of the segments is done, or how to implement the claimed streaming method and system.  As a result, *DDR Holdings* is not instructive to adjudication of the claims of the '802 patent.  *See Affinity v. Amazon,* at 39.

*DDR Holdings* is also distinguishable because the claims at issue in that case "do not attempt to preempt every application of the idea," whereas the claims of the '802 patent do. 773 F.3d at 1259.  In *DDR Holdings,* the court held that a patent directed to "increasing sales by making two web pages look the same" was eligible for patent protection because the claims "recite a ***specific way*** to automate the creation of a composite webpage by an 'outsource provider' that incorporates elements from multiple sources in order to solve a problem faced by

websites on the Internet." *Id.*   In contrast, the claims of the '802 patent do not contain any specifics on segmenting, formatting or configuring data for transmission through the Internet at different speeds.   Rather, *any* method of segmenting and formatting data for communication at different rates is preempted by the '802 claims.   Thus, unlike *DDR Holdings*, the '802 patent claims do not "recite a specific way" of formatting or configuring.

Apparently anticipating this argument, the Complaint alleges that the "'802 patent further offered particular technical solutions to protect digital media from delays or interruptions." But none of the passages cited in the Complaint describe anything other than the abstract idea of formatting data for delivery at different rates.   *See* Complaint, ¶¶ 24-26.   For instance, the Complaint states, "the '802 patent discloses that digital media 'may be formatted and transmitted to achieve a desirable transmission rate." *Id.* at ¶ 25.   Yet the patent never discloses how to format it, when to format it, or what formats should be used.   It discloses no way to perform the formatting to achieve the goal of transmitting at different rates.   The Complaint also alleges that "communication networks having less or slower transfer rates may be used to wirelessly communicate the selected audio information to the electronic device," but neither this example nor the patent specifies how to format these slower rate transfers.   *Id.*   Likewise, the Complaint's reference to "a hybrid of wireless communication rates may be deployed depending on the requirements of the selected audio information and/or the electronic device" provide no further detail on how to implement the generalized abstract idea of formatting data for delivery at different rates.   Thus, in contrast to *DDR Holdings* claims that "recited a specific way" to implement the idea, neither the '802 patent nor its claims contain anything more than the abstract idea itself.

### ii.    The Dependent Claims Do Not Add an Inventive Concept

The dependent claims of the '802 patent add only trivial limitations to the abstract idea. None of them have a sufficiently inventive concept to transform that abstract idea into patent eligible subject matter.   In fact, many of the dependent claims of the '802 patent are identical to

the dependent claims in the '085 sibling patent that Judge Smith held was ineligible for want of inventive concept.

Dependent claims 3 and 11 are directed to generic storing of the segmented files "in a storage medium" and generically compressing the segments.  But storing files in a storage medium and compressing files were conventional, well-known functions at the time of the filing, as the prior art cited by the '802 patent shows.  *See, e.g.,* U.S. Patent No. 5,539,658 filed on May 16, 1995 titled "Electronic presentation system using portable *storage media*"; U.S. Patent No. 6,963,783 filed on January 15, 1997 titled "Audio *compression* in a wireless remote interface tablet."  Further, because the claims recite an objective, and the specification does not describe any specialized way to store or compress the files, they purport to claim generic computer functions and are not inventive.  *See, e.g., Kroy IP,* 2015 LEXIS 69363 at *76 (invalidating claims that are "recitations of objectives . . . are effectively functional in nature, and would read on any method of achieving those objectives with a computer").

Dependent claims 4, 18 and 20 are simply directed to a particular type of requesting device—an electronic device with a battery, recharging circuit, a display, and an application (claim 4), an electronic device with an independent power supply, a display, and a collection of instructions (claim 18), and a mobile device with a wireless link (claim 20).  These dependent claims merely seek to limit the claims to particular technological environment, which is not inventive.  *See, e.g. Ultramercial*, 772 F.3d at 712.

Dependent claim 5 recites providing a link to the available media on a website.  This simply recites how a user accesses the media; it is not inventive.  *See Ultramercial*, 772 F.3d at 712, 716 (finding no inventive concept in the patent where one of the claims included how users access content).  The *Affinity v. Amazon* court made the same finding regarding dependent claims 17-20 of the '085 patent.  *Affinity v. Amazon,* at 24 (invalidating "claims 17, 18, 19, and 20 [which] recite how users access the content:  by browsing, requesting, and acquiring the right to access content").

Dependent claims 8 and 12 recite selecting the video from a group consisting of a "network stored media" and "a near real time broadcasted media," and claim 10 recites that the "media is a video."   This is merely an attempt to narrow the claims to a particular type of media—which is not inventive.  *See, e.g. Ultramercial*, 772 F.3d at 712 (finding no inventive concept in claims directed to "media products . . . being comprised of at least one of text data, music, data and video data").  These limitations are no different than dependent claims 3, 4, and 11 of the '085 sibling patent that merely recite that the media comprises music and text media content invalidated by Judge Smith.  *Affinity v. Amazon,* at 24.

Dependent claims 13, 15 and 17 are directed to the same abstract idea of independent claims 1 and 9 (arranging data for delivery at different rates by segmenting, formatting and delivering data) and are thus ineligible for the same reasons discussed above.  *See Becton, Dickinson and Co. v. Baxter Int. Inc.*, No. 1-14-cv-222, U.S. Dist. LEXIS 112834, *2, n.3 (W.D. Tex. Aug. 3, 2015) ("Where claims are 'substantially similar and linked to the same abstract idea,' the court may dispose of other claims in the patent with less detail" and "need not consider each claim distinctly.") (quoting *Content Extraction*, 776 F.3d at 1348).

### c.    The '802 Patent Claims Are Indistinguishable From Invalid Affinity Sibling Claims

As outlined above, the '802 patent claims are invalid.  Indeed, claims indistinguishable from the '802 patent claims have already been invalidated by Judge Smith in *Affinity v. Amazon*. Specifically, claim 16 of the sibling '085 patent (invalidated by Judge Smith under § 101) recites a "system that facilitates delivery of media" with "a network delivery resource" that maintains a list of network locations for available media content, and streams a portion of media content to requesting devices at a first rate, and streams another portion of the media content at a different rate "wherein a decision to change between a given communication rate and the different communication rate is at least partially based on a buffer fill in the [receiving] device." '085 Patent at 20:34-37.  This is exactly what the claims of '802 patent are directed to:  segmenting and formatting data for communication at different rates.

The limitations of exemplary claim 9 of the '802 patent line up completely to invalid claim 16 of the '085 patent:

| Claim 9 from the '802 Patent | Invalid Claim 16 from the '085 Patent |
|---|---|
| A **streaming method** comprising: | Claim 16 discloses a system for streaming media: "A system that facilitates **delivery of media**, comprising" ('085 Patent at 20:6) |
| receiving an HTTP communication at a **media delivery resource** that comprises a request for **a listing of network locations for segments of available media,** | Claim 16 discloses a "**network based delivery resource**" that receives requests for segments of media content. (*Id*. at 20:10-24). The claim expressly states that the delivery resource maintains "**a list of network locations for at least a portion of the content**." (*Id*. at 20:19-20). |
| further wherein the request is from a device having a **buffer**, | Claim 16 discloses that the request is from a device (a "handheld wireless device") with a "**buffer**." (*Id*. at 20:36-37) |
| [the device also has] a non-volatile memory, and **a collection of instructions** stored in the non-volatile memory | Claim 16 also discloses that the device has "**a collection of instructions** stored in a non-transitory storage medium." (*Id*. at 20:20:11-13). |
| [the instructions are operable] to **request a media segment** with a formatting that allows the media segment to be **delivered from the media delivery resource at a given rate**, | Claim 16 discloses that the instructions are operable to request a media segment that is formatted for delivery at a given rate. (*Id*. 20:13-17 ("instructions operable when executed to … send **a request for a streaming delivery of the content**"); *Id*. at 25-29 (the "delivery resource" responds to the "request by **delivering a portion of the media content at a given communication rate**."). |
| [the instructions are operable] to **consider an amount of information stored in the buffer**, and | Claim 16 expressly states that handheld device has the ability to consider the amount of data in its buffer. (*Id*. at 20:34-37 ("wherein a decision to change between a given communication rate and the different communication rate is at least partially **based on a buffer fill** in the handheld wireless device."). |
| [the instructions are operable] to request a different segment with a different formatting that allows the **different segment to be delivered from the media delivery resource at a different rate**, wherein the at least two rates are rates at which a streaming media can be output | Claim 16 expressly states that handheld device can request media that is formatted for delivery at two different rates. (*Id*. at 20:28-33 ("the network delivery resource is configured to ... respond to the request [for content] by delivering the portion of the content at a given communication rate …. and further **configured to deliver another portion of the content at a different communication rate**.") |
| sending a message comprising **a plurality of network locations** for different segments of the | Claim 16 discloses that "network delivery resource" maintains a "**list of network locations** |

| available media | for" its available media and has an interface that makes this content (and by implication the location of the content) available to the handheld device.  (*Id*. 20:6-24) |
|---|---|
| **sending a requested segment** of the available media, wherein the requested segment has a compression format that allows for use **at the given rate**; and | Claim 16 discloses "**delivering the portion of the content at a given communication rate**." (*Id*. at 20:28-29). |
| sending a different requested segment of the available media, wherein **the different requested segment has a different compression format**. | Claim 16 discloses delivery of "**another portion of the content at a different communication rate**." (*Id*. at 20:31-33). |

Given this pervasive overlap and the fact that claim 16 of the '085 patent was found patent-ineligible, this Court should find the '802 patent claims are likewise ineligible under § 101.

## IV.     CONCLUSION

As discussed above, all of the claims of the '802 patent are directed to an abstract idea that is ineligible for patent protection under 35 U.S.C. § 101.   Accordingly, Netflix's motion should be granted and this case dismissed with prejudice for failure to state a claim because all claims of the '802 patent are invalid.  To the extent the Court would find it helpful, Netflix respectfully requests a hearing be held on this motion.

Dated: November 18, 2015               Respectfully submitted,


                                       TYZ, MARTON, SCHUMANN LP
                                       Ryan J. Marton
                                       David Schumann
                                       Ryan Tyz
                                       28 2nd Street, Floor 3
                                       San Francisco, CA 94105
                                       rmarton@tyzlaw.com
                                       dschumann@tyzlaw.com
                                       rtyz@tyzlaw.com
                                       Phone: (415) 849-3577
                                       *Admitted Pro Hac Vice*

                                       MCGINNIS, LOCHRIDGE & KILGORE, LLP
                                       Richard D. Milvenan
                                       State Bar No. 14171800
                                       Carlos R. Soltero
                                       State Bar No. 00791702
                                       600 Congress Avenue, Suite 2100
                                       Austin, Texas  78701
                                       rmilvenan@mcginnislaw.com
                                       csoltero@mcginnislaw.com
                                       Phone: (512) 495-6000
                                       Fax:    (512) 495-6093


                                       By:/s/ Ryan J. Marton_____
                                            Ryan J. Marton

                                       ATTORNEYS FOR DEFENDANT
                                       NETFLIX, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Mark T. Mitchell
Frederick W. Sultan, IV
GARDERE WYNNE SEWELL LLP
600 Congress Avenue Suite 3000
Austin, Texas 78701
Telephone: (512) 542-7072
Facsimile: (512) 542-7272
mmitchell@gardere.com
fsultan@gardere.com

ATTORNEYS FOR PLAINTIFF

Ronald J. Schutz
Cyrus A. Morton
Patrick M. Arenz
Shira T. Shapiro
Kristine A. Tietz
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
RSchutz@robinskaplan.com
CMorton@robinskaplan.com
PArenz@robinskaplan.com
SShapiro@robinskaplan.com
KTietz@robinskaplan.com

ATTORNEYS FOR PLAINTIFF

/s/ Ryan J. Marton
Ryan J. Marton