IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AFFINITY LABS OF TEXAS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NETFLIX, INC., <br><br> Defendant. | Case No. 1:15-cv-00849-RP <br><br> Jury Trial Demanded |

**OPPOSED MOTION TO STRIKE
THE DECLARATION OF DR. KEVIN C. ALMEROTH (DKT. NO. 16-1)**

Defendant Netflix, Inc. requests that the Court strike and disregard the Declaration of Professor Kevin C. Almeroth (Dkt. No. 16-1) (the "Almeroth Declaration") submitted by Affinity Labs of Texas, LLC ("Affinity") in support of its opposition to Netflix's Motion to Dismiss.[1] The Almeroth Declaration should be disregarded because it is legally and factually irrelevant.

First, on a Rule 12(b)(6) motion, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the *motion* to dismiss that are central to the claim[s] and referenced by the complaint." *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (emphasis added). The Almeroth Declaration was neither attached to the complaint nor is it referenced by the complaint (*see* Dkt. No. 1, Complaint (the only exhibit is U.S. Patent No. 9,094,802), and is therefore legally

---

[1] Counsel for Netflix confirms that it conferred in good faith with counsel for Affinity pursuant to L.R. C-7(i) prior to filing this Motion, and counsel for Affinity indicated it would oppose the Motion.

irrelevant to Netflix's motion to dismiss. Indeed, courts in this circuit routinely exclude fact or expert declarations attached to *oppositions* to Rule 12(b)(6) motions—such as the Almeroth Declaration here. *See, e.g.*, *Hildebrandt v. Indianapolis Life Ins. Co.*, 2009 U.S. Dist. LEXIS 27407, at *21-22 (N.D. Tex. Mar. 30, 2009) (granting motion to strike declaration in opposition to Rule 12(b)(6) motion); *Creative Realty Inc. v. HD Supply Waterworks Grp. Inc.*, 2014 U.S. Dist. LEXIS 32300, at *14, n. 5 (W.D. La. Mar. 12, 2014) (declining to consider declarations submitted with opposition to motion to dismiss); *Gines v. Horton*, 699 F.3d 812, 820 (5th Cir. 2012) ("It is well-established that, in deciding whether to grant a motion to dismiss, a district court may not 'go outside the complaint.'" (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). For example, in *Hildebrandt* the court granted a motion to strike a declaration attached to plaintiff's opposition, holding that "the declaration may not be weighed or even considered in the 12(b)(6) context." *Hildebrandt v. Indianapolis Life Ins. Co.*, 2009 U.S. Dist. LEXIS at *21-22. Courts have also found expert declarations particularly unhelpful in determining the legal question of patent eligibility. *Genbrand US LLC v. Metaswitch Networks Corp., et al.,* Case No. 2:14-cv-00033, Dkt# 425 at 6 (E.D. TX, January 8, 2016). As is the case here, the *Genbrand* court recognized that all the information required to determine eligibility could be found in the patents themselves and as a result stuck the expert declaration. *Id.* The Almeroth declaration must be stricken. *Hildebrandt*, 2009 U.S. Dist. LEXIS 27407 at *21-22.

Second, the Almeroth Declaration is irrelevant to the subject of this motion, the patent eligibility of the '802 patent, because it focuses on HTTP adaptive bit rate (HTTP ABR) streaming, not the patent's claims. The Almeroth Declaration discusses at length whether HTTP ABR was conventional in March 2000, but ignores whether the claims of the '802 patent were

conventional as of that time. For example, the Almeroth declaration asserts that "the ability for a client device to dynamically select segments of video best suited for a client device's circumstances, based upon a playlist sent by server" was not conventional or routine as of 2000. *See* Almeroth Decl. ¶ 7. But none of the '802 patent claims cover this ability. None of the patent claims mention "dynamically select[ing] segments of video best suited for a client device's circumstances" nor do any the claims cover this functionality. The claims describe segmenting and formatting media for delivery at different communication rates and sending those segments in response to a request – but there is no claim element directed to a "dynamic" selection based on a "client device's circumstances." Similarly, the '802 claims require the generation of a list of segments including the segments' network locations but there is no limitation or element describing what a client is to do with this list. Paragraphs 7-13 of the Almeroth declaration are also exclusively focused on HTTP ABR without mention of or connection to the '802 claims. But neither "HTTP ABR," nor "adaptive bit rate," nor "adaptive bit rate streaming" appear in the '802 patent at all. As such, these paragraphs should be stricken.

The remainder of the Almeroth declaration is also irrelevant. For example, paragraph 14 of the Almeroth declaration asserts that Netflix's characterization of the '802 patent as being directed to "segmenting and formatting data for communication at different rates" ignores aspects of the invention. However, the allegedly "ignored" aspects are not in the '802 claims. For instance, the declaration asserts that media is downloaded to the client via HTTP. But none of the '802 claims require media be downloaded via HTTP. The only mention of "HTTP" in the claims requires that ***a request for media*** be sent via HTTP—*i.e.* over the Internet. There is no requirement as to ***how media is to be sent or downloaded***. Similarly, the declaration asserts that the "playlist is crucial to empowering the client device to request those media chunks or

segments that are best suited for the client's current network and processor conditions." But again, as explained above, the '802 patent claims merely require that playlist is generated and sent to the client. There is no explanation, let alone requirement, as to what the client is to do with the playlist – and certainly no explanation (or requirement) related to using the playlist to "empower[] the client device to request those media chunks or segments that are best suited for the client's current network and processor conditions."

Similarly, paragraph 15 of the declaration asserts that HTTP streaming can only be accomplished in a concrete and tangible manner. But the '802 patent neither describes nor claims HTTP streaming. The specification does not even mention HTTP and, as explained above, the claims do not include any limitation as to what protocol is to be used for sending media to a device.

Notably, Judge Smith struck a similar declaration from the same expert, Dr. Almeroth, that Affinity submitted in opposition to Amazon.com's Rule 12 motion when invalidating Affinity's sibling patent under § 101. *Affinity Labs of Texas, LLC. v. Amazon.com, Inc.*, 6:150-cv-00029, Dkt. 68, at 10 fn. 6 (W.D. Tex. Sept. 23, 2015) (adopting Magistrate's report and recommendation and granting motion to strike Almeroth declaration because the § 101 issue was "able to be evaluated through an analysis of the patent itself"). In *Amazon*, the court found that it did not need any material outside the patent and pleadings to determine eligibility of substantively similar claims from a sibling patent with very same specification. "Although the Court recognizes that the legal analysis under § 101 can contain underlying factual issues, in the instant case, the Court is of the opinion that no factual issues are present and the Court has adequately resolved the threshold matter of patent eligibility by examining the patent on its face,

without considering materials outside of the pleadings." *Id.* There is no reason for a different result here.

This Court can also examine the patent and its claims without assistance of Dr. Almeroth's declaration, which does not even focus on the claims. For the foregoing reasons, this Court should strike the Almeroth declaration that Affinity filed in this case and give it no weight in deciding Netflix's motion to dismiss.

Dated: January 13, 2016            */s/ Ryan Marton*

                              Ryan Marton, *Admitted Pro Hac Vice*
                              TYZ MARTON SCHUMAN, LLP
                              28 2nd Street
                              Floor 3, #3119
                              San Francisco, CA 94105
                              Telephone:    (415) 513-0765
                              Email:          rmarton@tyzlaw.com

                              Attorneys for NETFLIX, INC.

## CERTIFICATE OF SERVICE

      I hereby certify that on January 13, 2016, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Texas, Austin Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

Dated:  January 13, 2016             */s/ Ryan Marton*
                                                           Attorney Name